SAMUEL L. JEWETT, Respondent, v. THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 27, 1891.

**Equity:** REFORMING CONTRACT: EVIDENCE. In an action to reform a contract for the conveyance of a right of way to a railway company by inserting therein, as an additional consideration, an agreement on the part of the company to construct and maintain certain undercrossings on plaintiff's farm, unless the testimony establishes that as the true agreement and contract between the parties, then it is error for the trial court to reform the instrument by inserting such a provision therein; and the evidence in this case is reviewed and *held* insufficient to justify such action on the part of the court.

*Appeal from the Sullivan Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*E. J. Broaddus,* for appellant.

(1) The evidence did not authorize a reformation of the contracts. *Brohammer v. Hoss,* 17 Mo. App. 1; *Modrell v. Riddell,* 82 Mo. 31; 2 Pomeroy's Equity, secs. 870, 894; Story on Agency [4 Ed.] sec. 127. (2) The defendant is not bound by the representation of the agent beyond his authority when authority is disclosed. Story on Agency [4 Ed.] sec. 127; *Wheeler & Wilson v. Givan,* 65 Mo. 89; *Buckwalter v. Craig,* 55 Mo. 71; *Gelvin v. Railroad,* 21 Mo. App. 273; *Harrison v. Railroad,* 74 Mo. 364.

*A. W. Mullins,* with *R. A. DeBolt,* for respondent.

(1) The finding of the court on the first count of the petition is in accordance with the evidence in the case. The court found, and the evidence could lead only to such conclusion, that the instrument sought to be reformed did not express the full agreement between the parties. "The execution of agreements, fairly and legally entered into, is one of the peculiar branches of equity jurisprudence, and if the instrument which is intended to execute the agreement be, from any cause, insufficient for that purpose, the agreement remains as much unexecuted as if one of the parties had refused altogether to comply with his engagements, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief * * * by compelling the delinquent party to fully perform his agreement." *Cassity v. Metcalf,* 66 Mo. 519. (2) The appellate court in an equity case will defer to the finding of the trial court, because of the advantages possessed by the latter tribunal in observing the manner and demeanor of the witnesses, unless some cogent reason exists for a

departure from the rule. *Sharp v. McPike*, 62 Mo. 300 ; *Gill v. Ferris*, 82 Mo. 156, 168 ; *Snell v. Harrison*, 83 Mo. 651, 658. A close examination and analysis of the evidence will disclose that plaintiff's case is fully and amply made out and sustained. The plaintiff's statement of the contract, as set forth in his petition and testified to in his evidence, is fully and entirely corroborated by the evidence of Overton Harris, and denied in part only by defendant's agent Griffith, and he is contradicted by plaintiff and Harris, and, also, by Crooks. Defendant sought to prove by the witness Southerland an admission by plaintiff to the effect that he was sorry he had not requested defendant to put in an undercrossing. This evidence was directly denied by plaintiff, and is wholly inconsistent, not only with all plaintiff's evidence, but that of the agent Griffith also,

GILL, J.—This suit was tried on the issues made by a second amended petition and answer thereto. The petition contains two counts. The first seeks to reform two contracts, and the second count is for the recovery of damages for the breach of the contracts.

The petition alleges in the first count thereof that about the tenth of March, 1886, the defendant located its line of railroad upon, and through, plaintiff's lands in Sullivan county, Missouri ; that on or about the said tenth day of March, 1886, the plaintiff and his wife, and the defendant acting by, and through, its agents, "made and entered into a contract, by the terms of which it was agreed and understood that plaintiff, his wife joining with him therein, should convey by a proper deed the right of way for the location, erection and maintenance of defendant's railroad over, and across, the lands described ; that as the consideration for the conveyance of the right of way, as aforesaid, the defendant then and there agreed, undertook and

contracted with the plaintiff that it would in the erection of its said railway build, erect and forever maintain a passway under its said railway where the same passed over, and through, the lands aforesaid of the height and width ample and sufficient to allow a team and wagon to pass through the same, under the track of its said railway, and for plaintiff's cattle, horses and other live stock and domestic animals to safely and conveniently pass thereunder from one side of said railway to the other, and that as a further consideration for said right of way through said lands the defendant at the same time agreed, undertook and contracted with plaintiff to erect and maintain convenient and suitable farm crossings at designated places over its said railway on said land for plaintiff's use and benefit in crossing said railway * * * so as to permit the crossing of plaintiff's live stock in safety over said railway from one part of his premises to another;" that there were two of these contracts, but both alike except as to the description of the lands; that said contracts were on printed forms, and that the blanks were filled in by the defendant's agent and then handed to plaintiff to sign; that he then refused to sign them for the reason that they did not correctly state or contain the contract as agreed upon in failing to state the consideration for said right of way; that defendant's agent then said to plaintiff that the consideration of $1 as printed therein was a mere form, and that the defendant would assuredly comply with the contract as made, and would erect and maintain the passways and crossings in accordance with the contract; that relying upon the representations of defendant's agent so made at the time, and believing in good faith the defendant would carry out said contract, the plaintiff, his wife joining him therein, was induced to, and did, sign said printed contracts; that said consideration of $1 was left in said contract by mistake, and for the purpose on the part of the defendant to defraud and cheat the plaintiff out

his just rights, and that defendant's representations and promises so made as aforesaid were false, and made with the intent and purpose to deceive and defraud the plaintiff, and induced him to sign said printed contracts; that plaintiff relied on said false and fraudulent representations, and believed them at the time to be true, and was, by mistake, deception and fraud, induced to, and did, sign said printed contracts. The plaintiff prayed relief that the court reform said contracts so as to make them conform to the true agreement and contract as made between plaintiff and defendant.

The second count of the petition set out that defendant's railroad was permanently located, as alleged in the first count, and that it had been constructed, and that it was being operated, and divers trains were passing over it daily. It sets forth the numbers of the lands owned by plaintiff and his wife, being in all four hundred acres; that said lands were being used by plaintiff for farming and stockraising purposes, and for which they are most valuable. It alleges the contract as actually made for the conveyance of the right of way, as set forth in the first count, and that the plaintiff, his wife joining with him therein, had duly performed the same on his part, and had made a deed of conveyance to the defendant for the right of way through said lands (said deed having been executed April 5, 1886), but "that the defendant had failed, neglected and refused to build, erect and maintain, or to build said passway under said railway track, or to construct any passage thereunder, and that it had failed, neglected and refused to make suitable and convenient road crossings over its said railway track as it agreed and contracted to do. Plaintiff alleged in said count that said railway passes through his said lands running north and south, and dividing said lands so that one hundred and eighty acres thereof are on the east side, and two hundred and twenty on the west side, of the railway, and that plaintiff's dwelling-house and

barn are on the west side of the railway, and all of said land on the east side thereof is pasture land, and suitable and profitable for stock pasturage. Plaintiff alleged that he was damaged in the sum of $3,000, and asked judgment therefor.

Defendant's answer was a general denial. Upon a trial by the court the issues were found for the plaintiff on both counts of the petition, a decree was entered reforming the contract as prayed in the first count, and on the second count the damages were assessed at $1,166 and judgment rendered accordingly. Defendant has appealed to this court.

I. It will be observed that the object sought by plaintiff's action is, *first*, the reformation of a written contract between plaintiff and defendant, so as to make the same conform to the terms of an agreement entered into, and then, *second*, an award of damages against defendant for an alleged failure to comply with such contract so reformed. In the matter of the right of way over plaintiff's land the plaintiff claims in his petition that it was agreed and contracted between himself and defendant "that it would, in the erection of its said railway, build, erect and forever maintain a passway under its said railroad where it passed over, and through, the lands of plaintiff of a height and width sufficient to pass wagons, stock, etc., from one side of said railway to the other side," etc. But that by the fraud and deceit practiced by defendant's agent the said undertaking and agreement to construct and maintain said underground passway was left out of said written contract.

First now as to the equitable side of this controversy. Was the trial judge authorized under the evidence in finding and declaring, in words of the decree, "that the defendant during the negotiations, and immediately prior to signing said contract, agreed to build and erect on plaintiff's land, and for his convenience, a passway or crossing under said railway," etc?

Unless the testimony established this as the true agreement and contract between plaintiff and defendant, then it is clear the court was not justified in inserting such a provision. The evidence bearing on this question is as follows: Plaintiff Jewett testified: "I told the agent Griffith ( who negotiated the right of way ) that I wanted an undercrossing, so that my stock could pass from one field to the other without having to cross the track, and so I could drive teams and loads of hay through, and I was also to have the necessary grade crossings. The agent said that the law gave me the necessary farm grade crossings, and that the company he represented was a good liberal company, and would give me the undercrossing. With this understanding I signed the contract to right of way to my lands, then we went to the house where my wife was, and my wife and I signed the contract for right of way over her land. I agreed with the understanding that defendant's company would give me the undercrossing. I hesitated and would not sign the contract until the agent Griffith had positively promised me that I was to have the crossing,—the underground crossing, I mean. I pointed out to him about where I would want it, and he said that would be all right. This conversation was had before I signed the contracts. *He told me at the time he had no authority to make such contracts, and that he could not put it in the contract, but he said it would be all right, I should have the undercrossing.* I knew that there was no agreement for an undercrossing in the contracts when I signed them, but Griffith, the agent, assured me that it would be built, and then I signed. I would not have signed it but for his agreement to build the underground crossing."

The right-of-way agent Griffith on this point testified: "I went with witness Harris to see plaintiff about right of way. Mr. Harris introduced me to him. I asked him to give me the right of way, as his neighbors had done. He asked me for an undercrossing, and

pointed to a place where he wanted it. And he said the company would have to put in a bridge there, anyway. He said he would not sign for his wife, but she could do as she wanted to. We went to the house and saw her. I told him the law gave her good crossings. That I had nothing to do with that. That my authority was limited to getting the right or way. The secretary of the defendant, P. M. Meyers, instructed me before I went out after right of way not to have any agreement of any kind, except for the right of way. That if I could not get it given to me to pay for it, and that was the extent of my authority. Jewett, the plaintiff, did most of the talking. He wanted me to agree to give him an undercrossing. I did not agree to do it. I would not put it in the contract that he was to have an undercrossing; and he knew it was not in the contract when he signed it. He seemed to take it for granted that the company would have to put in the crossing anyway."

Whatever assurances then the agent Griffith may have given plaintiff Jewett as to such crossing, it is yet obvious that he (Griffith) was not authorized to bind the railroad company to such agreement, and that Jewett at the time well knew that the agent had no such authority. "He (Griffith) told me at the time he had no authority to make such contracts, and that he could not put it in the contract," testifies the plaintiff. It thus appears clear from the testimony of these witnesses, that Griffith, the agent, never assumed to bind the railroad company in a contract to put in the under passway. Said agent had no such authority, was restricted to securing right of way by gift, or, if not given, then to purchase, and pay for same in the usual way. And the agent so informed the plaintiff at the time. How can it be said that the defendant company made any such contract when the negotiations for the right of way were had by an agent with express directions to make no such agreement, and of which direction and want of authority plaintiff had full knowledge

at the time.   Any such promise for an under passway, if made at all, was nothing more than the individual undertaking of Griffith, the agent, made not for, or on behalf of, the *company* (for he had no such authority), but a mere side agreement by the agent in relation to a matter to which he, the agent, could not bind the railroad company.   Since then the defendant railroad company never agreed "to build and erect on plaintiff's land a passway or crossing made under said railway," as the evidence very clearly shows, the trial court erroneously changed and reformed the contract so as to include such an obligation on its part.   It follows, therefore, that the judgment herein was for the wrong party, and must be reversed.   All concur.